IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jonathan M. Rodriguez, )<br>　　　　　　　　　　　　　　　　)<br>　　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>Correctional Officer Taylor; )<br>Captain Joyce W. Brunson; )<br>Major Joey Norris; and )<br>Sheriff Kenny Boome; )<br>　　　　　　　　　　　　　　　　)<br>　　　　　Defendants. )<br>_____) | CIVIL ACTION NO. 9:08-1027-RBH-BM<br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was a detainee at the Florence County Detention Center, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on July 7, 2008. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 8, 2008, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff failed to file a response to the Defendants' motion within the requisite time period; however, following an Order of the Court dated September 11, 2008, in which Plaintiff was granted some additional time, Plaintiff did file a memorandum in opposition to the Defendants' motion on September 18, 2008, following which the Defendants filed a Reply Memorandum on



September 29, 2008. Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that on February 10, 2008, the Defendant Taylor was taking some inmates out of the maximum segregation unit to use the phone, at which time Plaintiff asked another correctional officer (Morgan) if he could ask yet another correctional officer (Smith) if she would allow Plaintiff to make a phone call. Morgan apparently told Plaintiff that Smith had said no (Plaintiff's complaint illegible and therefore hard to read on this particular point). Plaintiff then asked if he could speak with Smith (a lieutenant) when she had the time, but Morgan told him that Smith was not coming back down to the "max".

Plaintiff alleges that he was then standing in his [illegible] looking out [illegible], when the Defendant Taylor was bringing the inmates back from making their phone calls. Plaintiff alleges that Taylor "looked his way", and then left and went out and began speaking with some other officer before leaving to go back to booking. Plaintiff alleges that he was still in his doorway looking out of the window when corrections officer "Rose" turned off the unit lights but kept Plaintiff's room lights on. Plaintiff alleges that Taylor, Morgan and Rose then entered the unit with the restraint chair. Taylor stopped at Plaintiff's door with a taser gun in his hand and ordered Plaintiff to turn

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



around and get on the floor. Plaintiff alleges that he told the officers that they could not enter his cell without a sergeant or lieutenant present, and that Taylor responded that they did not need one. Plaintiff alleges that Taylor, Morgan and Rose then entered his room. Plaintiff alleges that he backed up with his hands across his chest, but dropped his arms when Taylor [apparently] pointed the taser at his chest. Plaintiff alleges that Taylor then gave the taser gun to Morgan, while at the same time swinging at Plaintiff and hitting him in the face. Plaintiff alleges he backed up and that Taylor continued to hit him in the face and also shoved him. Plaintiff alleges that the was then grabbed from behind and put in the restraint chair with the straps "entirely too tight". Plaintiff alleges that he was left in the restraint chair in the "freezing cold with my lip busted, my eye black and blue and swollen, and my back bruised and . . . left thumb busted".

Plaintiff apparently alleges that other inmates started banging on their cell doors (again, Plaintiff's complaint is hard to read) in order to get a sergeant or lieutenant to come down to the cell block. It is unclear who, if anyone came (due to the difficulty of reading Plaintiff's complaint), but Plaintiff alleges he was kept in the restraint chair past four hours, until there was a shift change. Plaintiff alleges an officer "Wesley" finally came into his cell, and Plaintiff told him what had happened. Plaintiff alleges that later that same day and on February 11, 2008, the "CO's" did a search of his unit, at which time Plaintiff showed the officers doing the search his bruises and scars, and that these officers included the Defendant Brunson.

Plaintiff seeks monetary damages, including injunctive relief, some of which does not relate to the claims in his complaint (such as a request to receive better quality food). See generally, Plaintiff's Complaint.

In support of summary judgment in the case, the Defendant Taylor has submitted an

3



Affidavit wherein he attests that he is a corrections officer employed with the Florence County Sheriff's Department. Taylor attests that on February 10, 2008, he was returning with an inmate who had been permitted to make a telephone call when he noticed Plaintiff beating on his door and yelling from his cell. Taylor attests that he later returned to maximum segregation (where Plaintiff was housed) to assist in placing the Plaintiff in a restraint chair as a result of his unruly behavior. Taylor attests that he and other officers approached Plaintiff's cell and instructed him to turn around and face the wall, get on his knees, and place his hands behind his back, but that Plaintiff initially refused to do so. Taylor attests that when these instructions were repeated, Plaintiff kneeled but refused to do as instructed with his hands. Taylor attests that another officer then opened the door to the cell, and that he (Taylor) along with a third officer went into the cell, picked up the Plaintiff, and put him in the restraint chair. Taylor attests that approximately two hours later, Plaintiff was still continuing to yell even after being placed in the restraint chair, and that a burst of "capstone" was sprayed into the multipurpose room[3].

Taylor attests that the force used to control the Plaintiff on February 10, 2008 was a last resort and was absolutely necessary under the circumstances. Taylor attests that Plaintiff was being disruptive and disobedient, and was a threat to the security of the Florence County Detention Center. Further, any injury Plaintiff received, which is not conceded, was de minimis at best. Taylor attests that a copy of a General Occurrence Report detailing what happened is attached to his affidavit as an exhibit. Finally, Taylor attests that the Defendants Brunson, Norris and Boone were not personally involved in the incident alleged in the Plaintiff's complaint. See generally, Taylor Affidavit, with attached exhibits.

---

[3]Plaintiff was placed in the restraint chair in the multipurpose or "rec" room, not in his cell.



The Defendants have also submitted an affidavit from Maria Barsana, who attests that she is employed at the Florence County Detention Center in the medical records department. Barsana attests that she is familiar with the Plaintiff, and that attached to her affidavit is a copy of a nurse's note from the Detention Center dated February 11, 2008. This nurse's note reflects that Plaintiff was seen by the nurse on that date, and reads as follows:

> [small amount] of bruising on upper back. [illegible] scratches. [small amount] of bruising to both arm pits. [small] wound on [left] lower leg. Cleaned [] [and] applied neosporin bandaged.

Barsana attests that, other than this nurse's note, there is no documentation of any medical treatment or any requests for medical treatment based on the incident set forth in Plaintiff's complaint. Bursana attests that inmates have access to inmate sick call requests should they need medical treatment or have medical complaints, but that Plaintiff never submitted an inmate sick call request following the alleged incident on February 10, 2008. Barsana further attests that, while Plaintiff had his vital signs taken multiple times following February 10, 2008, he did not complain of the injuries alleged in his complaint. Barsana attests that, if he had, there would be documentation of same. See generally, <u>Barsana Affidavit</u>, with attached exhibits.

The Defendants Joyce Brunson (a Captain) and Joey Norris (a Major) have both submitted affidavits wherein they attest that they are not involved in the daily decision making with regard to individual inmates, and that the only knowledge they have about the incident alleged in the complaint comes from the General Occurrence Report. Both of these individuals attest that, although their names appear on this form under "Detention Center Administration", they were not involved in the actions taken in the report in any way. Both of these individuals attest that they do not make determinations about whether to employ certain acts in cases of individual inmates, nor do they

5



charge officers with a certain course of conduct to address individual inmate behavior. See generally, Brunson and Norris Affidavits, with attached exhibit [General Occurrence Report].

For his part, Plaintiff has provided copies of two disciplinary tickets, one relating to the incident of February 10th and 11th, 2008, and a second one relating to an incident which purportedly occurred on June 27, 2008, well after Plaintiff had filed this lawsuit. See Court Docket No. 23. As attachments to his response in opposition to Defendants' motion for summary judgment, Plaintiff has attached copies of several Inmate Request Forms wherein Plaintiff complains about how he is being treated by detention Center officers (all of which predate the incident of February 10th and 11th, 2008). These documents reflect that prison administrators believed Plaintiff to be a "management problem" who was often being charged with violations of jail policies. Plaintiff has also submitted several "notice of appeal" documents, all of which post-date the incident alleged in his complaint by several months, which are written on Department of Corrections appeal forms. See generally, Plaintiff's attachments.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see

6



Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants assert, inter alia, that this case should be dismissed for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Booth v. Churner, 532 U.S. 731, 741 (2001); Porter v. Nussle, 534 U.S. 516 (2002); see 42 U.S.C. § 1997(e)(a). Given that Plaintiff's complaint was filed only one week after the alleged incident at issue, it might be reasonable for this Court to assume that Plaintiff did not exhaust the jail's administrative remedies prior to filing this lawsuit.

However, while making a general argument in their brief that Plaintiff failed to exhaust his administrative remedies, Defendants have failed to provide any specifics, nor have they offered any evidence which shows what the grievance procedure is at the jail or that Plaintiff failed to avail himself of those procedures. For his part, Plaintiff complains in both his verified complaint and in his memorandum opposing summary judgment that there was no grievance procedure at the institution for him to follow. See Verified Complaint, Section II. Since it is the Defendants who have the burden of showing that Plaintiff failed to exhaust his administrative remedies; see Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Defendants' failure to meet their burden on this issue by offering evidence to establish this affirmative defense serves to defeat their argument for dismissal on this ground.

7



## II.

As public employees, all four Defendants are subject to suit for damages under § 1983 in their individual capacities. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is asserting his damages claims against the Defendants in their individual capacities.

With respect to the Defendants Brunson, Norris and Broome, however, there is no evidence, nor even any allegations in the complaint, that these Defendants had anything whatsoever to do with the events surrounding Plaintiff's claim[4]. Rather, it is readily apparent that the only reason Broome has been named as a Defendant in this case is because he is the Sheriff for Florence County (and for whom all three of the other named Defendants presumably work), while the only reason Brunson and Norris have been named as party Defendants is because they are (again, presumably) supervisory officials at the Florence County Detention Center. The fact that these three Defendants may have, in effect, been "higher ups" in the chain of command is not, however, sufficient to allow Plaintiff to maintain a § 1983 claim against them, as the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Therefore, unless Plaintiff has set forth allegations of specific wrongdoing on the part of these Defendants, they may not be held liable for the acts of Taylor or others absent an official policy or custom for which they were responsible and which resulted in illegal action. See

---

[4]The only time any of these Defendants are even mentioned in the narrative of Plaintiff's complaint is when Plaintiff alleges that Brunson was one of the officers who participated in a search of his cell sometime after the event, and was one of the officers to whom Plaintiff allegedly showed his "bruises".



generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)).

Plaintiff has made no claim of any official policy or custom of these three Defendants which resulted in the allegedly unconstitutional conduct here. To the contrary, Plaintiff specifically alleges that the actions of the Defendant Taylor and others were in direct violation of prison policy, either by the correctional officers entering his room without authorization and without a sergeant or lieutenant being present, and by his being restrained in the restraint chair for longer than the allowed period of time. Therefore, these three Defendants are entitled to dismissal as party Defendants in this case. Cf. Hyrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) ["[T]here is no pure respondeat superior liability under §1983, [and] a supervisor [may only be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.' "(quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989))].

### III.

With respect to the Defendant Taylor, when reviewing allegations of excessive force, the Court must consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived



by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986). See Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008); Ajaj v. United States, 479 F.Supp.2d 501, 537 (D.S.C. 2007); see also United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991); Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); Wilson v. Williams, 83 F.3d 870, 873 (7th Cir. 1996) [applied to pretrial detainee]; Thomas v. Sawyer, No. 97-2475, 1999 WL 155704 at *3 (N.D.Tex. Mar. 11, 1999); Moore v. Martinez County Jail, No. 98-731, 1998 WL 602113 at *2 (N.D.Cal. Sept. 4, 1998).

    Here, Plaintiff (a maximum security inmate) himself concedes in his verified complaint, as well as in his memorandum opposing summary judgment, that he initially failed to obey the officers' instructions to him, told the officers that they were not allowed to enter his cell, and that when he was told to turn around and get on the floor, he instead initially responded by placing his hands across his chest. It was at this point, according to the allegations of Plaintiff's complaint, that Officer Taylor used physical force against him, including (according to Plaintiff's allegations) hitting him in the face. Plaintiff then alleges that after he was on the floor, Taylor along with Officers Rose and Morgan "grabbed" him and put him in the restraint chair with the straps on too tight. Thus, assuming Plaintiff's allegations to be true for purposes of summary judgment, the prison guards were at least initially presented with a situation where a maximum security prison inmate who they considered to be acting unruly and with (as shown by Plaintiff's own exhibits) a

10



previous history of being considered a management problem, was refusing to comply with the requests and instructions given to him, thereby requiring the prison guards to pursue a course of action to extract Plaintiff from his cell and secure the situation. While Plaintiff argues that it was not necessary for Taylor to hit him (assumed to be true for purposes of summary judgment) to achieve this result, the evidence nevertheless shows that there was a justification for the application of some force, as the prison guards could reasonably have perceived a threat to both themselves and to prison security based on the events as portrayed in the allegations of Plaintiff's complaint as well in the other exhibits submitted to the Court by both Plaintiff and the Defendants.

Nor is the evidence sufficient to create a genuine issue of fact as to whether the amount of force used was more than was minimally required under the circumstances. The evidence before the Court, including Plaintiff's own allegations, is that force was not used on the Plaintiff until after he had refused to comply with the officers request to turn around and get on the floor with his hands behind his back. Further, while physical force ultimately was used, Plaintiff has presented no evidence (other than the general and conclusory allegations of this complaint) that the amount of force used was excessive. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) [even though pro se litigants are held to less stringent pleading standards then attorneys, the court is not required to "accept as true legal conclusions or unwarranted factual inferences."]. The medical exhibit provided to the Court by the Defendants, as well as the affidavit from Maria Barsana, reflect that Plaintiff was found to have only a small amount of bruising on his upper back and armpits, with some scratches, while Plaintiff has himself submitted no medical evidence whatsoever concerning his alleged injuries, or indeed that he even requested treatment for these alleged injuries. To the contrary, Plaintiff acknowledges in his memorandum opposing summary judgment that he did not

11



fill out a medical request form since he had already been seen by the nurse, who observed only "scratches and bruises on my person", not the "busted lip" and "swollen" black eye alleged in the Complaint. Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995) [explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of reasonable probability", and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"](internal quotation marks omitted); See Strickler v. Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical and mental injury, of course, is inadequate to survive a motion for summary judgment]; Robles v. Glenn, No.06-256, 2007 WL 1655335 at * 4 (E.D.Tex. June 5, 2007)["[W]here the objective factors of an inmate's medical records show no evidence of any injuries consistent with the inmate's allegations, the Court may conclude that the allegations are implausible."](citing Wilburn v. Shane et al., No. 98-21077 (5th Cir. Aug. 20, 1999)(unpublished), citing Wesson v. Oglesby, 910 F.2d 278, 281-282 (5th Cir. 1990); see generally Aswegan v. Henry, 49 F.3d 461,465 (8th Cir. 1995)[stating that when an inmate alleges a serious medical need either for treatment or to avoid certain conditions, the inmate's bare assertion of a serious medical condition is insufficient without medical evidence verifying that the condition exists]; Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994)[prisoners self-diagnosis alone will not support a medical conclusion]). See also Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) [because prison officials are entitled to use appropriate force to quell prison disturbances, and because these officials oftentimes must act under pressure without the luxury of a second chance, in order for a prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for

12



the very purpose of causing harm]; Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"].

While these types of injuries could conceivably give rise to a claim under some state law or prison policy or procedure, they are not sufficient to show a "constitutional" violation. Norman v Taylor, 25 F.3d 1259, 1262-1263 (4th Cir. 1995)[absent the most extraordinary circumstances, a plaintiff cannot prevail on an 8th Amendment force claim if his injury is de minimis]; Thaddeus-X v. Wodniak, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006)[No constitutional violation where the Plaintiff suffered de minimis injuries which included relatively minor scrapes and bruises and less-than-permanent aggravation of a prior shoulder condition]; Stanley v. Hejirika, 134 F.3d 629, 637-638 (4th Cir. 1998)[bruising of prisoner's right arm, left jaw, left and right wrists and back, and a tooth which was loosened constituted de minimis injury.]; see also Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]. See 42 U.S.C. § 1997e(e) ["No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury."]; c*f.* Zehner v. Trigg, 952 F.Supp. 1318, 1323-1324 (S.D.Ind. 1997); Siglar v. Hightower, 112 F.3d 191, 193-194 (5th Cir. 1997)[claim based on sore and bruised ear lasting for three days was de minimis, and thus, Plaintiff failed to raise valid Eight amendment claim for excessive use of force nor did he have requisite "physical injury" to support claim for emotional or mental suffering.]; See also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189,

13



200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].

Plaintiff's placement in a restraint chair also does not in and of itself constitute an excessive use of force, as the use of devises such as restraint chairs or four-point bed restraints have repeatedly been found to be constitutional when used appropriately. Here, the Plaintiff's general and conclusory claim that the rec room (where he was placed in the restraint chair) was unreasonably "cold", without any supporting evidence to show that this room was for some reason unreasonably cold on that date, does not in and of itself constitute evidence of the constitutional violation. Further, the fact that a "burst" of mace or some type of chemical munition was sprayed into the rec room when Plaintiff continued to exhibit disruptive behavior also does not create a genuine issue of fact as to whether excessive force was used or mandate that Plaintiff's claim go forward, as the use of mace, tear gas or pepper spray by prison officials is not a per se violation of a prisoners constitutional rights. Williams, 77 F.3d at 763; Underwood v. Martin County Sheriff's Office, No. 07-14050, 2008 WL 2561928 at * 5 (S.D.Fla. May 27, 2008)["Courts have held that even simple inmate recalcitrance, in the form of refusal of verbal orders, may in appropriate circumstances justify the use of force (e.g., the application of mace, in non-dangerous amounts), to obtain inmate compliance so as to maintain institutional order, even when the inmate is in handcuffs, or locked in his cell when the chemical agent is used."]; Norris v. District of Columbia, 614 F.Supp. 294 (D.D.C. 1985), aff'd, 787 F.2d 675 (D.C.Cir. 1986); Peterson v. Davis, 551 F.Supp. 137 (D.Md. 1982), aff'd without op., 729 F.2d 1453



(4th Cir. 1984); O'Connor v. Keller, 510 F.Supp. 1359 (D.Md. 1981); Brock v. Robinson, 378 F.Supp. 1263 (W.D.Pa. 1974); Collins v. Schoonfield, 363 F.Supp. 1152 (D.Md. 1973); Davis v. United States, 316 F.Supp. 80 (E.D.Mo. 1970), aff'd 439 F.2d 1118 (8th Cir. 1971); Williams v. Dehay, Nos. 94-7114, 94-7115, 1996 WL 128422 **2-3 (4th Cir. March 21, 1996). There is no allegation in Plaintiff's complaint, and certainly no evidence to show, that an excessive amount of chemical spray was used, or that it was even sprayed directly at or on the Plaintiff, instead of just being discharged generally into the rec room. Nor has any medical evidence been presented to show any injury suffered as a result of the use of a chemical spray. Hence, there is no evidence that, to the extent a chemical spray was used in this instance, a constitutional violation occurred under the facts and evidence presented. Williams, 77 F.3d at 763; Seabrooks v. Cooper, No. 07-3101, 2008 WL 4414250 at **4-5 (D.S.C. Sept. 23, 2008)["Short Burst" of chemical spray not a constitutional violation where used to maintain order and no evidence of significant injury]; Justice v. Dennis, 834 F.2d 380, 383 (4th Cir. 1987), vacated on other grounds, 490 U.S. 1087 (1989); Bailey v. Turner, 736 F.2d 963 (4th Cir. 1984); see also Riley v. Dorton, 115 F.3d 1159, 1166-1167 (4th Cir. 1997); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979).

Finally, there is also no evidence before the Court to show that Plaintiff was kept in the restraint chair for an excessive period of time, or that Plaintiff suffered any injuries as a result of his placement in the restraint chair. Plaintiff complains that he was kept in the restraint chair until the next "shift change", but does not say how long a period of time this was, other than to complain that it was over four (4) hours. He also does not indicate how often he was checked on or whether he was under constant supervision in the rec room. Taylor's affidavit indicates Plaintiff was placed in the restraint chair around 1:00 a.m., and that he was still in the restraint chair at 3:30 a.m. (which



is when the burst of "capstone" was sprayed into the multi-purpose room). It is unclear at what time thereafter Plaintiff was ultimately released from the restraint chair, but the General Occurrence Report indicates that Plaintiff received his breakfast later that morning. Hence, while obviously uncomfortable to the Plaintiff, this evidence (in conjunction with the medical evidence showing Plaintiff suffered no injuries as result of being in the restraint chair) is not sufficient to establish a constitutional violation for purposes of surviving summary judgment. Fuentes v. Wagner, 206 F.3d 335, 345-346 (3d Cir. 2000), cert. denied, 531 U.S. 821 (2000); cf. Blakeney v. Rusk County Sheriff, 89 Fed. Appx. 897 (5th Cir. 2004)[Where pretrial detainee was placed in restraint chair for twenty hours after he disobeyed orders and engaged in unruly, destructive practices, his due process rights were not violated since the purpose was not punishment][bench trial]; Green v. McCurry, No. 02-4326, 2003 WL 21826549 * 9 (N.D.Ill. Aug. 5, 2003)[Evidence of inhumane treatment required].

Therefore, the Defendant Taylor is entitled to summary judgment on Plaintiff's excessive force claim.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Charleston, South Carolina
November 12, 2008



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

